IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BENJAMIN DAVID TEMPLE and WATCH OVERKILL, LLC,

    *Plaintiffs,*

vs.

PEJMAN GHADIMI and SECRET CONSULTING FLORIDA, LLC d/b/a WATCH TRADING ACADEMY,

    *Defendants.*

Case No. 22-cv-02261-EFM-TJJ

**MEMORANDUM AND ORDER**

    Before the Court is Defendants Pejman Ghadimi's and Secret Consulting Florida, LLC d/b/a Watch Trading Academy's Motion to Dismiss each of Plaintiffs' claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  In this Motion, Defendants argue that the Court lacks specific personal jurisdiction over Defendants because they did not purposefully direct any activity toward the state of Kansas.  In response, Plaintiffs argue that Defendants knew Plaintiffs reside in Kansas and knew that harm from the allegedly wrongful conduct would be suffered in Kansas, thus establishing purposeful direction.  Plaintiffs also argue that Defendants acted through their alleged agent Luis Miranda to enter into a contract with Plaintiffs to be performed in Kansas.  For the reasons set forth below, the Court grants Defendants' Motion.

## I. Factual and Procedural Background[1]

Plaintiff Benjamin David Temple is a Kansas resident and his business, Plaintiff Watch Overkill, LLC, is organized under Kansas law. Defendant Pejman Ghadimi is a Florida resident and his business, Defendant Secret Consulting Florida, LLC d/b/a Watch Trading Academy ("WTA"), is organized under Florida law. Defendants have no place of business in Kansas, are not registered for business there, do not advertise to Kansas residents via any physical medium, and do not target Kansas residents through online advertising. In fact, Defendants' only known contacts with Kansas are Plaintiffs and two other Kansas residents partaking in WTA courses. The parties collided when Temple signed up—along with at least 42 others—for Defendants' WTA training courses, which provide information on buying and selling luxury watches. The courses do not target Kansas nor provide Kansas-specific information.

Part of the reason Temple signed up for WTA's training courses was Ghadimi's claim that his "prize student," Luis Miranda, had made more than $1 million in profits from trading luxury watches. After connecting with Miranda through WTA, Temple entered into a contract with him to purchase eight luxury watches for $104,000. The watches were to be delivered to Temple in Kansas. However, Miranda only delivered one of the promised watches. At no time was Miranda working for or an agent of Defendants. Defendants were not parties to this contract.

Shortly after Miranda failed to deliver the watches, Temple discovered that Miranda had lied about his profits, a lie endorsed by Defendants when Ghadimi vouched for Miranda. When Temple went to Ghadimi about Miranda's false statements, he discovered that Ghadimi had

---

[1] The facts are taken from Plaintiffs' Complaint and affidavits submitted by both parties. Unless controverted by affidavit, the allegations from the Complaint are considered true for the purposes of this Motion.

likewise been artificially inflating his own sales numbers in order to sell more WTA training courses. Temple disclosed his discoveries to several members of the luxury watch industry.

In response to Temple's revealing his fraudulent advertisements to industry members, Ghadimi authored a defamatory post about Plaintiffs on WTA's Facebook group page. The Facebook group page was built to help members of the luxury watch industry network with each other and preexists the events underlying this case. This group contained hundreds of individuals involved in the watch trading industry from across the globe, with automatic membership for individuals enrolled in WTA classes. Addressing this group, Ghadimi's post contained several derogatory statements regarding Temple, deriding his business practices and personal character. The post did not mention Kansas.

Plaintiffs thereafter brought the present suit, claiming fraud, defamation, and tortious interference with existing business relationships or expectations. Defendants now move to dismiss all claims against them for lack of personal jurisdiction.

## II.    Legal Standard

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move for dismissal of any claim in which there is no personal jurisdiction. A plaintiff opposing a motion to dismiss based on a lack of personal jurisdiction bears the burden of showing that jurisdiction over the defendant is appropriate.[2] To do so, the plaintiff must make a prima facie showing that personal jurisdiction is proper.[3] Once the plaintiff makes that showing, the defendant "must present a

---

[2] *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000) (citing *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)).

[3] *Id.*

compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.' "[4]

The court views the allegations in the complaint as true if they are uncontroverted by the defendant's affidavits.[5]  "However, only the well pled facts of [the] plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[6]  The plaintiff must support its jurisdictional allegations in a "complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."[7]  "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[8]

### III.  Analysis

Federal courts determine whether personal jurisdiction exists over parties based on the law of the forum state.[9]  Courts must therefore ask "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."[10]  As interpreted by the Kansas Supreme Court, the Kansas long-arm statute "extend[s] jurisdiction to the fullest extent allowed under the Due Process

---

[4] *Id.* at 1227 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

[5] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[6] *Id.* (citations omitted).

[7] *Id.* at 1508 (quoting *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

[8] *Id.* (further quotations and citations omitted).

[9] *See Serv. Experts, LLC v. Otte*, --- F. Supp. 3d ----, 2022 WL 2390229, at *2 (D. Kan. 2022).

[10] *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (further citation and quotations omitted).

Clause of the Fourteenth Amendment."[11]  Accordingly, "the Court need not conduct a statutory analysis and may proceed directly to the due process analysis."[12]

Personal jurisdiction may take the form of either general or specific jurisdiction over a defendant.[13] Only specific jurisdiction is at issue in the present case, as neither party contends that the Court has general jurisdiction over Defendants.[14]  "Specific jurisdiction . . . allows a court to exercise jurisdiction over an out-of-state defendant only for claims related to the defendant's contacts with the forum State."[15]

For a court to exercise specific jurisdiction over a defendant, that defendant must have "purposefully established minimum contacts within the forum State."[16]  A defendant has minimum contacts with a forum state if "(1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.' "[17]  Plaintiffs here argue two reasons that the Court may exercise specific jurisdiction over Defendants.  First, Plaintiffs contend that Defendants purposefully directed the defamatory statements at Kansas because they knew Temple was a Kansas resident and Watch Overkill, LLC, was based out of Kansas.  Second, Plaintiffs assert that Miranda was acting as Defendants' agent

---

[11] *Serv. Experts*, --- F. Supp. 3d ----, 2022 WL 2390229, at *2 (citing *Merriman v. Crompton Corp.*, 282 Kan. 433, 146 P.3d 162, 179 (2006)).

[12] *Id.*; *see also Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223 (10th Cir. 2020) (applying same principle to analysis of personal jurisdiction under Oklahoma law).

[13] *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).

[14] *See Dental Dynamics,* 946 F.3d at 1228, n.2 ("Because Dental Dynamics advances no arguments in favor of general personal jurisdiction, we treat specific personal jurisdiction as the only variant at issue.").

[15] *XMission*, 955 F.3d at 840 (10th Cir. 2020).

[16] *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322 (10th Cir. 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)) (further citation and quotations omitted).

[17] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 472 (further citation and quotations omitted).

when Temple entered into the contract with him to purchase eight watches, thereby subjecting Defendants to specific jurisdiction on Plaintiffs' fraud claim.

**A.     Defendants do not have minimum contacts with Kansas because they have not purposefully directed any activities at Kansas.**

For the purposes of this Order, neither party disputes that Plaintiffs' alleged injuries arise out of Defendants' activities. Therefore, the sole issue before this Court is whether Defendants purposefully directed their activities at the state of Kansas, thereby establishing minimum contacts with Kansas. In general, "[p]osting on the internet from outside the forum state an allegedly defamatory statement about a forum resident does not create the type of substantial connection between the poster and the forum state necessary to confer specific personal jurisdiction."[18] Furthermore, "knowledge of an alleged victim's out-of-state status, standing alone, cannot confer personal jurisdiction over a defendant engaging in allegedly tortious activity."[19] Instead, "the forum state itself must be the focal point of the tort."[20]

Because the question of purposeful direction is at best somewhat nebulous, the Tenth Circuit routinely employs specific frameworks to determine whether a defendant has purposefully directed his activities at a forum state.[21] In the intentional tort context, the Tenth Circuit employs the "harmful effects" framework for analyzing purposeful direction.[22]

---

[18] *Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011) (quoting *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010)) (further brackets and ellipses omitted).

[19] *Dental Dynamics,* 946 F.3d at 1231 (citing *Walden v. Fiore*, 571 U.S. 277, 282–83 (2014)).

[20] *Dudnikov*, 514 F.3d at 1074 n. 9 (further citation and quotations omitted).

[21] *See XMission*, 955 F.3d at 841; *Old Republic*, 877 F.3d at 905 (listing three frameworks often used by courts in determining whether a defendant purposefully directed their activities at a forum state: (1) continuing relationships; (2) market exploitation; and (3) harmful effects).

[22] *See Dental Dynamics,* 946 F.3d at 1231.

Under the harmful effects framework, a plaintiff must prove the following to establish that the defendant purposefully directed his activities at a forum state: "(1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state."[23]  What actions are "expressly aimed" at a forum state is a question best served by "analogizing individual cases to discrete . . . personal jurisdiction precedents."[24]  The factual scenario in the present case—a defamatory internet post against a forum state resident—has been explicitly addressed by the Tenth Circuit multiple times.[25]

Here, the parties each cite different Tenth Circuit cases dealing with defamatory internet postings to support their respective positions.  Plaintiffs rely on *Silver v. Brown*[26] where the Tenth Circuit found that specific jurisdiction existed over the defendant.[27]  There, the plaintiff was a New Mexico resident suing the defendant because of his derogatory blog post about the plaintiff's character and business.[28]  Instead of using a neutral internet forum, the defendant had created the blog specifically to target the plaintiff and his business.[29]  In fact, the defendant incorporated the plaintiff's name and "Santa Fe" into the blog's domain name.[30]  Finding that New Mexico was "unquestionably the center of [the plaintiff's] business activities" where the brunt of the plaintiff's injuries would inevitably be felt, the Tenth Circuit held that "this is not a case of untargeted

---

[23] *Id.*

[24] *Dudnikov*, 514 F.3d at 1071.

[25] *See, e.g.*, *WAKE 10, LLC v. McNaughton, Inc.*, 588 F. Supp. 3d 1231, 1235–39 (D. Kan. 2022) (summarizing Tenth Circuit caselaw on the issue).

[26] 382 F. App'x 723 (10th Cir. 2010).

[27] *Id.* at 732.

[28] *Id.* at 725–27.

[29] *Id.* at 729.

[30] *See id.*

negligence that just happened to cause damage in New Mexico."[31] Instead, the defendant had purposefully directed his tortious activities at New Mexico itself.[32] Accordingly, the court could exercise specific jurisdiction over the defendant.[33]

In contrast, Defendants rely upon *Shrader v. Biddinger*.[34] In *Shrader*, a book publisher sent an email to his customers— and later posted that same email on a traders' forum—with allegedly defamatory statements about a writer, an Oklahoma resident.[35] However, "Oklahoma was not the focal point of the email posted by [the publisher], either in terms of its audience or its content."[36] Furthermore, the traders' forum was a neutral internet site with no particular ties to Oklahoma.[37] Finally, there was no evidence that the writer's work was specific to Oklahoma but rather that it enjoyed a worldwide audience through the internet.[38]

With these facts in mind, the Tenth Circuit distinguished its previous holding in *Silver*.[39] Specifically, the Tenth Circuit noted: (1) the obvious difference between a neutral internet forum and a blog created to target a plaintiff's business; (2) the fact that most of the writer's business

---

[31] *Id.* at 730.

[32] *Id.*; *see also Dudnikov*, 514 F.3d at 1078 ("[A]ctions that are performed for the very purpose of having their consequences felt in the forum state are more than sufficient to support a finding of purposeful direction.") (further citation and quotations omitted).

[33] *See Silver*, 382 F. App'x at 730.

[34] 633 F.3d 1235 (10th Cir. 2011). In their Response, Plaintiffs attempt to distinguish *Shrader* by arguing that it applied Oklahoma law instead of Kansas law. However, the case makes clear that Oklahoma's longarm statue operates identically to that of Kansas in that it allows personal jurisdiction over out-of-state parties to the fullest extent allowed by due process. *Id.* at 1239. Accordingly, the Tenth Circuit in *Shrader* discussed federal due process not Oklahoma law. Therefore, Plaintiffs' distinction is irrelevant.

[35] *Id.* at 1238.

[36] *Id.* at 1245.

[37] *Id.*

[38] *Id.*

[39] *Id.*

took place online "with no particular tie to the forum state" unlike the plaintiff in *Silver* who conducted most of his business in New Mexico; and (3) the blog in *Silver* "would inherently have included a substantial number of forum state residents and businesses" whereas there was no evidence that the publisher's audience would have been substantially Oklahoma residents.[40] The Tenth Circuit concluded:

> Given the geographically-neutral content of the message posted by [the publisher] and the inquiry that prompted it (regarding the status of a business selling market-trading materials over the internet), the geographically-neutral nature of the forum where it was posted, and the lack of any facts developed by Mr. Shrader to suggest otherwise, there is no basis for concluding that [the publisher] targeted his post at Oklahoma.[41]

In the present case, Plaintiffs' arguments focus on the fact that Plaintiffs are from Kansas "and Defendants allegedly had knowledge that the injury would be felt in Kansas."[42] These arguments are unavailing, as Plaintiffs cannot show that Defendants purposely directed their activities at the state of Kansas. Rather, the facts here more closely align with those of *Shrader* than *Silver*.

First, Ghadimi posted the allegedly defamatory statement to a preexisting neutral internet forum, namely WTA's Facebook group. Like the forum in *Shrader*, the WTA Facebook group did not focus on Kansas or provide Kansas-specific information. Nor was it created to target Plaintiffs' business.

---

[40] *Id.*

[41] *Id* at 1245–46; *see also WAKE 10*, 588 F. Supp. 3d at 1239 (finding no specific jurisdiction over defendant because: (1) "the message was posted on a website that is a neutral forum already in place for other purposes;" (2) the defendant's posts were "geographically neutral [with] no indication that he was targeting his post at Kansas or Kansas residents;" and (3) "there is no indication that Kansas residents purchase items . . . from Plaintiff's product page more frequently than citizens of other states").

[42] *WAKE 10*, 588 F. Supp. 3d at 1239 (rejecting arguments identical to those urged by Plaintiff in this case).

Second, the content of Ghadimi's post was geographically neutral. Not once did Ghadimi mention Kansas nor allude to anything Kansas-related. It solely dealt with Temple's business practices and personal character. For this factor to favor finding that Defendants expressly aimed their defamatory post at Kansas, Plaintiffs must show that Kansas was the center of Plaintiffs' business activities. Plaintiffs could have met this burden through either allegations or affidavits. They did not. In fact, nothing in Plaintiffs' Complaint or any submitted affidavit even shows that Plaintiffs sold watches to Kansas residents at all. Rather, like the plaintiff in *Shrader*, the only connection to Kansas that Plaintiffs rely upon is that Plaintiffs are *located* in Kansas and conduct business *from* there. Under Tenth Circuit precedent, this is not enough—particularly in the age of the internet—to confer specific jurisdiction over Defendants.

Finally, there is nothing geographically specific to Kansas about the group reading the post. Rather, the hundreds of WTA Facebook group members hail from all over the United States and even the world. At best, the allegations before the Court show that only three of those members (Temple included) were Kansas residents. Even if the two other WTA members who were Kansas residents participated in the group—a fair assumption when drawing all inferences in favor of Plaintiffs—this alone is not enough to show that the post's target audience "would inherently have included a *substantial number*" of Kansas "residents and businesses."[43] Again, this factor pushes Plaintiffs' case closer to *Shrader* than *Silver*, showing that Defendant's did not expressly aim the defamatory post at Kansas.

Based on these factors, Plaintiffs cannot establish that Defendants purposefully directed their conduct at the state of Kansas. Therefore, Plaintiffs fail to establish minimum contacts under

---

[43] *Id.* at 1245 (distinguishing facts in *Shrader* from those of *Silver*) (emphasis added).

the harmful effects framework. As this is the only framework upon which Plaintiffs rely for specific jurisdiction, the Court does not have personal jurisdiction over Defendants.

**B.     Defendants were not parties to the contract between Temple and Miranda, meaning the Court does not have personal jurisdiction over them under K.S.A. § 60-308(b)(1)(E).**

Plaintiffs also argue that personal jurisdiction should exist over Defendants "with regard to at least one of Plaintiffs' claims" because Temple entered into a contract with Miranda to purchase eight watches and have them delivered to Kansas. For the first time in their Response, Plaintiffs refer to Miranda as Defendants' agent. This allegation is notably absent from the Complaint and without any supporting affidavit. With that assumption, Plaintiffs argue that Defendants—through Miranda—entered into a contract to be performed in Kansas, subjecting Defendants to personal jurisdiction under K.S.A. § 60-308(b)(1)(E). This statute states:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the following acts, thereby submits the person and, if an individual, the individual's representative, to the jurisdiction of the courts of this state for any claim for relief arising from the act . . . [including] entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state.[44]

In reply, Defendants aver that Miranda is not and never has been Defendants' agent or employee. Furthermore, Ghadimi's affidavit states that Defendants have not entered into any agreement with Temple to provide or ship watches to Kansas. Even if Plaintiffs' facts mentioned for the first time in their Response were properly before the Court,[45] Defendants' affidavit stands uncontroverted by any other affidavit, thus controlling the issue for the purposes of this Order. Because Defendants were not a party to the contract either directly or through Miranda as an agent,

---

[44] K.S.A. § 60-308(b)(1)(E).

[45] *See Rix v. McClure*, 2011 WL 166731, at *1, n. 1 (D. Kan. 2011) ("Plaintiff makes additional factual allegations regarding his claims in his responses to defendants' motions. However, a brief in response to a motion to dismiss is not the proper place to bolster allegations made in a complaint.").

they are not subject to personal jurisdiction under K.S.A. § 60-308(b)(1)(E)—accordingly, the Court need not address whether the exercise of personal jurisdiction comports with due process.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 8) is **GRANTED.**

**IT IS SO ORDERED.**

Dated this 24th day of January, 2023.

This case is closed.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE